1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11   JOSE RODRIGUEZ,                    )   NO. CV 12-04960 SS
                                        )
12                    Plaintiff,        )
                                        )
13            v.                        )
                                        )   **MEMORANDUM DECISION AND ORDER**
14   CAROLYN W. COLVIN,                 )
     Acting Commissioner of the        )
15   Social Security Administration,    )
                                        )
16                    Defendant.        )
     _____)

17

18

**I.**

19

**INTRODUCTION**

20

21

Jose Rodriguez ("Plaintiff") brings this action seeking to overturn
the decision of the Commissioner of the Social Security Administration
(hereinafter the "Commissioner" or the "Agency") denying his application
for Social Security Disability Insurance benefits ("DIB") and
Supplemental Security Income benefits ("SSI").  The parties consented,
pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned
United States Magistrate Judge.  For the reasons stated below, the
decision of the Agency is AFFIRMED.

**II.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on January 20, 2009. (Administrative Record ("AR") 123-134). He alleged a disability onset date of March 1, 2006. (AR 123). His last-insured date was December 31, 2006. (AR 135). The Agency initially denied this claim on April 8, 2009. (AR 50-51). After Plaintiff requested and received reconsideration of his claim, Plaintiff's claim was denied again on October 8, 2009. (AR 52-53).

On November 17, 2009, Plaintiff filed a written request for a hearing. (AR 87). Plaintiff testified at a hearing held before Administrative Law Judge ("ALJ") Helen E. Hesse on September 15, 2010. (AR 20-49). On January 27, 2010, the ALJ issued a decision denying benefits. (AR 6-19). That same day, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 1). The Appeals Council denied Plaintiff's request on April 11, 2012. (Id.). Plaintiff then requested judicial review by filing the instant action on June 15, 2012.

**III.**

**FACTUAL BACKGROUND**

Plaintiff, who was forty-five at the time of the ALJ hearing, has a high school education and earned an electronic technician certificate from a trade school. (AR 29, 123, 131, 147, 149). Plaintiff worked as a forklift operator from 1993 until 2005. (AR 149). As discussed

2

1  below, Plaintiff was incarcerated at various points after his alleged
2  disability onset date.  Additionally, Plaintiff used methamphetamine
3  until 2006, when he was first incarcerated.  There is no record of
4  methamphetamine use after incarceration, including after Plaintiff was
5  released to a "sober living" halfway house in May 2009.  Plaintiff was
6  incarcerated again from September to December 2009 for a parole
7  violation.  He currently lives at both his sister's home and his
8  mother's home.  Plaintiff reports that he has not abused drugs since his
9  initial incarceration.

10

11      During the hearing, Plaintiff stated that he has not worked since
12  2006, although he noted that he worked "for a couple of months" in "2005
13  or 2006."  (AR 32).  Plaintiff stated that he has not received
14  unemployment benefits, state disability benefits, workers' compensation
15  benefits, or general relief benefits since 2006 and that he has had no
16  income since that time.  (Id.).  According to Plaintiff, he cannot work
17  because he hears voices.  (AR 33).  Specifically, when the ALJ asked
18  Plaintiff why he is unable to work, Plaintiff stated, "I don't know.
19  I just - I hear voices.  I mean, it - I just walk away from the jobs."
20  (Id.).  Plaintiff further testified that the voices are sprits telling
21  him "[w]hat people are thinking" such as that he is "stupid."  (Id.).

22

23      Plaintiff testified that he watches television, takes walks, helps
24  care for his nephews, cleans the pool and garage, mows the lawn, and
25  reads every day.  (AR 34).  Additionally, according to staff at the
26  facility where Plaintiff resides, Plaintiff "[was] able to do all
27  household chores," "go[] outside daily," and "walk[] and use[] public

28

transportation" but "[could] not legally drive."   (AR 174).   When
Plaintiff lived at the facility, he shopped in stores on a weekly basis
and was able to pay bills, count change, handle a savings account, and
use a checkbook. (AR 174-75).   At that time, Plaintiff's hobbies and
interests included "watching TV, walking and going on bus rides," which
Plaintiff did each day "with no problem."   (AR 175).

Plaintiff also testified that medication helps his condition.   (AR
36).   Additionally, according to Department of Corrections medical
reports, Plaintiff previously stated that medication "quiet[s] the
voices" and helps with his concentration and feelings of paranoia.   (AR
262).

**A.**   **Plaintiff's Medical History**

A variety of medical professionals have examined Plaintiff between
his alleged disability onset date and when he filed for benefits.   The
Court summarizes Plaintiff's medical history below.

Plaintiff did not receive professional mental health care treatment
until he was incarcerated.   Department of Corrections medical records
from 2007 indicate that Plaintiff suffered from amphetamine-induced
psychotic disorder and amphetamine dependence with hallucinations.   (AR
200-34).   In the absence of amphetamine use, the Department of
Corrections diagnosed Plaintiff with bipolar II disorder, not otherwise
specified, and polysubstance dependence with a GAF of 60.   (AR 212-14).
Department of Corrections psychological evaluation records also state

that Plaintiff's fund of information, intellectual functioning, organization and association of thought were all within normal limits. (AR 216). Additionally, a February 14, 2007 report noted that Plaintiff did not suffer from "perception disturbances" and that his hallucinations were "under control of meds [sic]." (AR 214). Upon evaluation by the Department of Corrections in 2009, Plaintiff reported no negative side effects from medication. (AR 289). Department of Corrections medical reports also indicate that, according to Plaintiff, "the first time he heard a voice he had been up for a long time and that he was using methamphetamine at the time. He states that the first time he took medications for this issue was while he was in prison. He states that the medications help with his feelings of paranoia, help him concentration [sic], and quiet the voices." (AR 262).

In March 2009, consultative psychiatrist Sohini Parikh, M.D., diagnosed Plaintiff with mood disorder, N.O.S.; alcohol and drug abuse, in remission; and bipolar disorder with a GAF of 70. (AR 235-41). Dr. Parikh noted that Plaintiff had no impairment in mental functioning. (AR 237-39). Dr. Parikh reported that Plaintiff lived in a sober house, was able to pay bills, manage funds, take care of grooming and hygiene, and get along with others, including close friends. (AR 237). According to Dr. Parikh, Plaintiff attended all sober house meetings and assisted in the kitchen. (Id.) Dr. Parikh also noted that Plaintiff had no difficulty completing household tasks, following simple oral and written instructions, or making decisions. (Id.). Plaintiff was able to focus during the evaluation. (Id.) Further, Dr. Parikh observed that Plaintiff reported hearing voices "but stated that this could be

1   'his own thoughts'" and denied having visual hallucinations.  (AR 238).

2   According to Dr. Parikh, Plaintiff denied "delusions, phobias, or ideas

3   of reference" and displayed "no evidence that [he] was responding to

4   internal stimuli during the . . . evaluation."  (AR 238-39).

5   Additionally, Plaintiff was able to perform serial sevens and serial

6   threes and could complete simple calculations.  (AR 239).

7

8        In April 2009, state agency medical consultant Dr. R. Paxton, M.D.,

9   reported that Plaintiff's impairments were nonsevere.  (AR 242).  Dr.

10  Paxton noted that Plaintiff presented with personality disorders and

11  substance addiction disorders.  (Id.)  However, Dr. Paxton reported that

12  Plaintiff had only mild restriction of activities of daily living, mild

13  difficulties in maintaining social functioning, mild difficulties in

14  maintaining concentration, and no repeated episodes of decompensation

15  of extended duration.  (AR 242-49).

16

17       In July 2010, Plaintiff's treating physician, Dr. Ingyu Kim, M.D.,

18  reported that Plaintiff had marked limitation in the ability to follow

19  instructions and respond appropriately to criticism from supervisors,

20  maintain attention and concentration for extended periods, perform

21  activities within a schedule, maintain regular attendance and be

22  punctual within customary tolerances, and work in coordination with or

23  proximity to others without being distracted by them.  (AR 305).  Dr.

24  Kim also reported that Plaintiff had moderate limitation in the ability

25  to interact appropriately with the general public or get along with

26  coworkers or peers without distracting them or exhibiting behavioral

27  extremes.  (Id.).  Additionally, Dr. Kim noted that Plaintiff would have

28

6

trouble reacting to changes in a work environment and would have difficulty establishing realistic goals or making plans independently of others. (Id.). Finally, Dr. Kim noted that Plaintiff's impairments would cause him to miss three or more days of work each month. (Id.). However, at the ALJ hearing, medical expert Dr. Craig Rath, M.D., testified that he reviewed Plaintiff's medical records and found no support for Dr. Kim's conclusions. (AR 40). Dr. Rath further testified that although there was evidence that Plaintiff was markedly limited in several areas when he was using drugs, in the absence of methamphetamine use, Plaintiff's impairment was mild. (AR 41).

**B.   Vocational Expert's Testimony**

A vocational expert testified at the 2010 hearing. (AR 45-47). The expert testified that a hypothetical individual of Plaintiff's vocational profile and residual functional capacity ("RFC") would be able to perform all of Plaintiff's past relevant work. (AR 47) ("Yes he could. All of the prior work."). The vocational expert also testified that such a person would not be able to perform Plaintiff's past relevant work if he had to miss more than two days of work a month. (Id.).

**C.   Lay Witness Testimony**

On February 17, 2009, Emanuel Olague, Plaintiff's case manager at his sober house, submitted a third party function report. (AR 171-78). Mr. Olague reported that between waking up and going to bed, Plaintiff

1   "attends required education and group sessions concerning his mental

2   health and addiction issues." (AR 171). According to Mr. Olague,

3   Plaintiff "can not [sic] work outdoors due to medication." (AR 172).

4   Additionally, according to Mr. Olague, Plaintiff "is able to do all

5   household chores." (Id.). Mr. Olague further reported that Plaintiff

6   "goes outside daily" and walks and uses public transportation but "can

7   not [sic] legally drive." (AR 174). The report indicates that

8   Plaintiff shops in stores on a weekly basis, is able to pay bills, count

9   change, handle a savings account, and use a checkbook. (AR 174-75).

10  Plaintiff's hobbies and interests include "watching TV, walking and

11  going on bus rides," which Mr. Olague reported Plaintiff does on a daily

12  basis "with no problem." (AR 175). However, Mr. Olague noted that

13  Plaintiff "has difficulties focusing and staying alert while injoying

14  [sic] [such] activities." (Id.). According to Mr. Olague, Plaintiff

15  is also "extremely talkative with others in the program, although

16  Plaintiff has problems with memory, stress, routine changes, completing

17  tasks, concentration, understanding, following instructions including

18  written instructions, and getting along with authority figures." (AR

19  176-77).

20

21  **D.   Plaintiff's Testimony**

22

23       At the hearing, Plaintiff testified that he stopped working because

24  he hears voices. (AR 33). Specifically, Plaintiff stated, "I just -

25  I hear voices. I mean, it - I just walk away from the jobs." (Id.).

26  Plaintiff testified that sprits tell him "[w]hat people are thinking."

27  (Id.). For example, Plaintiff stated that the spirits tell him that

28

8

1   other people think he is "stupid."  (Id.).  Plaintiff also stated that

2   medication helps his condition.  (AR 36).  Plaintiff stated that he

3   watches television, takes walks, helps care for his nephews, cleans the

4   pool and garage, mows the lawn, and reads every day.  (AR 34).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a
medically determinable physical or mental impairment that prevents him
from engaging in substantial gainful activity[1] and that is expected to
result in death or to last for a continuous period of at least twelve
months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing
42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
incapable of performing the work he previously performed and incapable
of performing any other substantial gainful employment that exists in
the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts
a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful
     activity?  If so, the claimant is found not disabled.
     If not, proceed to step two.

---

[1]  Substantial gainful activity means work that involves doing
significant and productive physical or mental duties and is done for pay
or profit.  20 C.F.R. § 416.910.

1      (2)  Is the claimant's impairment severe?  If not, the
2             claimant is found not disabled.  If so, proceed to step
3             three.
4      (3)  Does the claimant's impairment meet or equal the
5             requirements of any impairment listed at 20 C.F.R. Part
6             404, Subpart P, Appendix 1?  If so, the claimant is
7             found disabled.  If not, proceed to step four.
8      (4)  Is the claimant capable of performing h[er] past work?
9             If so, the claimant is found not disabled.  If not,
10             proceed to step five.
11      (5)  Is the claimant able to do any other work? If not, the
12             claimant is found disabled.  If so, the claimant is
13             found not disabled.

14

15 Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
16 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

17

18     The claimant has the burden of proof at steps one through four, and
19 the Commissioner has the burden of proof at step five.  Bustamante, 262
20 F.3d at 953-54.  If, at step four, the claimant meets her burden of
21 establishing an inability to perform the past work, the Commissioner
22 must show that the claimant can perform some other work that exists in
23 "significant numbers" in the national economy, taking into account the
24 claimant's RFC, age, education and work experience.  Tackett, 180 F.3d
25 at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the
26 testimony of a vocational expert or by reference to the Medical-
27 Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

28

Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240
F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
(strength-related) and nonexertional limitations, the Grids are
inapplicable and the ALJ must take the testimony of a vocational expert.
Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

On May 11, 2011, Plaintiff appeared and testified at a hearing held
before ALJ Helen E. Hesse.  An impartial vocational expert and medical
examiner also testified at the hearing.  (AR 38-41, 45-47).

The ALJ then employed the five-step sequential evaluation process
and concluded that Plaintiff was not disabled under the Social Security
Act.  (AR 11-16).  At step one, the ALJ found that Plaintiff had not
engaged in substantial gainful activity since his alleged disability
onset date of March 1, 2006.  (AR 12).  At step two, the ALJ found that
Plaintiff had the severe impairments of "methamphetamine abuse, in
remission during incarceration and monitoring, and bipolar II disorder."
(Id.).  At step three, the ALJ throughly considered the impairments
listed in step two and found that, through the last-insured date,
Plaintiff's "substance abuse disorder meets listing 12.09."  (Id.).

Consistent with 42 U.S.C. § 423(d)(2)(C), the ALJ then found that Plaintiff is not disabled.[2]   (AR 12).   42 U.S.C. § 423 and the regulations promulgated thereunder operate to deny social security disability benefits to claimants whose alcoholism or drug addiction is a contributing factor material to the determination of his or her disability.  See 20 C.F.R. § 416.935.[3]  Here, the ALJ explained that "if [Plaintiff] stopped the substance use, the remaining limitations would not cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would not have a severe impairment or combination of impairments."  (AR 12).

While the ALJ stated that Plaintiff would not have "a severe impairment" but for his substance use, the ALJ concluded that Plaintiff's impairments would not render him disabled absent his drug use.  Specifically, the ALJ found that Plaintiff had the RFC of someone able to perform basic work activities including (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding

---

[2]     Section 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

[3]     Section 416.935(b)(1) provides that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."

1    appropriately to supervision, co-workers, and usual work situations;"
2    and (6) "[d]ealing with changes in a routine work setting."  (AR 12-13).
3    The ALJ then found that without substance abuse, Plaintiff would not be
4    disabled because he could perform all of his past relevant work.  (AR
5    13).  Accordingly, the ALJ concluded that "[Plaintiff] has not been
6    disabled within the meaning of the Social Security Act at any time from
7    the alleged onset date through the date of this decision."  (AR 16).

8

9                                   **VI.**

10                          **STANDARD OF REVIEW**

11

12        Under  42  U.S.C.  §  405(g),  a  district  court  may  review  the
13   Commissioner's decision to deny benefits.  The court may set aside the
14   Commissioner's decision when the ALJ's findings are based on legal error
15   or are not supported by substantial evidence in the record as a whole.
16   Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.
17   Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial evidence is
18   more than a scintilla, but less than a preponderance."  Reddick, 157
19   F.3d at 720.  It is "relevant evidence which a reasonable person might
20   accept as adequate to support a conclusion."  Id.  To determine whether
21   substantial evidence supports a finding, the court must "'consider the
22   record as a whole, weighing both evidence that supports and evidence
23   that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d
24   at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).
25   If the evidence can reasonably support either affirming or reversing
26   that conclusion, the court may not substitute its judgment for that of
27   the Commissioner.  Reddick, 157 F.3d at 720-21.

28
                                    13

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ committed error for two reasons. First, Plaintiff alleges that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Dr. Kim. (Pl's. Mot. Summ. J. at 3-7).  Second, Plaintiff alleges that the ALJ "fail[ed] to consider Plaintiff's mental impairment of bipolar disorder II severe" when she found that, when sober, Plaintiff does not have an impairment that severely affects his ability to perform basic work activities. (Pl's. Mot. Summ. J. at 7; AR 7-8).  The Court finds that Plaintiff's claims lack merit.  For the reasons discussed below, the Court finds that the ALJ's decision should be AFFIRMED.

**A.   The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Kim's Opinion**

According to Plaintiff, "the ALJ erroneously assessed no weight to the treating physician's opinion." (Pl's. Mot. Summ. J. at 6).  In the alternative, Plaintiff argues that "[even if] Dr. Kim's opinion is not supported by objective evidence[,] the ALJ still had a duty to recontact the doctor to obtain clarification and/or additional evidence." (Id.). In support of these contentions, Plaintiff argues that if the ALJ found the evidence from Dr. Kim to be inadequate to determine whether Plaintiff was disabled, the ALJ was required to seek additional evidence or clarification from Dr. Kim. (Id.) (citing 20 C.F.R. §404.1512(e)(1) and 20 C.F.R. §416.912(e)(1)) ("We will seek additional evidence or

14

clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")

### 1.   The ALJ Properly Considered Dr. Kim's Opinion

Plaintiff's contention that the ALJ failed to properly consider Dr. Kim's opinion lacks merit.  Although the opinion of a treating physician is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). When a treating doctor's opinion is contradicted by another doctor, "the Commissioner may not reject his opinion without providing 'specific and legitimate reasons' supported by substantial evidence." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)).  An ALJ may give less weight to a treating physician's opinions when the treating physician's opinions conflict with those of a non-examining physician and the non-examining physician's opinions are consistent with the record. Magallanes v. Bowen, 881 F.2d 747, 751-755 (9th Cir. 1989).

Here, Plaintiff notes that Dr. Kim completed a work capacity evaluation form regarding Plaintiff and found that Plaintiff had a number of restrictions.  (Pl's. Mot. Summ. J. at 4-5) (citing AR 304-05).  Dr. Kim reported that Plaintiff had marked limitation in the

15

ability to follow instructions and respond appropriately to criticism from supervisors, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and work in coordination with or proximity to others without being distracted by them. (Id.). As Plaintiff further notes, Dr. Kim found that Plaintiff would have moderate limitation in the ability to interact appropriately with the general public or get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.). Additionally, Plaintiff observes that Dr. Kim reported that Plaintiff would have trouble reacting to changes in his work environment and would have difficulty establishing realistic goals or making plans independently of others. (Id.). Finally, Plaintiff points to Dr. Kim's conclusion that Plaintiff would miss three or more days of work each month. (Id.) (citing AR 305).

According to Plaintiff, "the ALJ erred in concluding that Dr. Kim's opinion is not supported by documentation." (Id. at 4). Plaintiff contends that "[t]he record includes Dr. Kim's treatment notes ranging from January 2009 to August 2010, which support Dr. Kim's opinion." (Id. at 5) (citing AR 308-30). However, the ALJ did not base her decision to reject Dr. Kim's opinion merely on an absence of supporting documentation. Instead, the ALJ observed that Dr. Kim's opinions conflict with the opinions of other physicians, both examining and non-examining, and that those physicians' opinions are more consistent with the record. Specifically, the ALJ stated that "[t]he evidence of record is consistent in indicating that [Plaintiff] is high functioning, with

1  GAF ratings of 60-70, when not using illegal substances." (AR 15). The
2  ALJ also observed that "[t]he medical opinions of medical expert Dr.
3  Rath, and the medical opinions of consultative examiner Dr. Parikh, and
4  State agency medical consultant Dr. Paxton, as well as the opinions of
5  treating sources in the Department of Corrections, are fully credible
6  based upon supportability with medical signs and laboratory findings,
7  consistency with the record, and area of specialization." (Id.).

8

9      The ALJ's conclusion is supported by the record. Dr. Parikh's
10 conclusions regarding Plaintiff's limitations, which are contrary to Dr.
11 Kim's conclusions, find an abundance of support in the medical evidence.
12 (AR 15). On March 29, 2009, Dr. Parikh examined Plaintiff and reported
13 that Plaintiff, who was then living in a sober house, "does manage funds
14 and pay bills. [Plaintiff] takes care of grooming and hygiene.
15 [Plaintiff] wakes up at 5 am, helps out in the kitchen, he attends all
16 meetings, and he completes paperwork." (AR 237). Dr. Parikh also
17 reported that Plaintiff was "able to focus attention during th[e]
18 evaluation. [Plaintiff] has no difficulty completing household tasks.
19 [Plaintiff] can follow simple oral and written instructions.
20 [Plaintiff] has no difficulty making decisions." (Id.). Additionally,
21 according to Dr. Parikh's examination notes, Plaintiff was "cooperative"
22 and "attentive during the evaluation." (AR 238). Dr. Parikh also
23 observed that while Plaintiff reported hearing voices, Plaintiff
24 admitted that they "could be his own thoughts." (Id.). Plaintiff
25 denied "delusions, phobias, or ideas of reference. There was no
26 evidence that the claimant was responding to internal stimuli during the
27 contact period of th[e] evaluation." (AR 238-39). Plaintiff was able
28

17

to perform serial sevens and serial threes and to complete simple calculations.  (AR 239).

Dr. Parikh diagnosed Plaintiff with mood disorder, not otherwise specified; alcohol and drug abuse, in the past; bipolar disorder, by history; and hypertension, by history.  (AR 240).  However, Dr. Parikh noted that "[f]rom a psychiatric standpoint, [Plaintiff's] prognosis is expected to improve if he refrains from using drugs and alcohol and complies with medications."  (Id.).  Dr. Parikh concluded that (1) "[t]here are no mental restrictions in [Plaintiff's] daily activities;" (2) "[t]here are no mental difficulties in maintaining social functioning;" (3) "[Plaintiff's] concentration, persistence, and pace are not impaired;" (4) "[t]here are no repeated episodes of emotional deterioration in work-like situations;" (5) "[Plaintiff's] ability to understand, carryout [sic], and remember simple instructions is not impaired;" (6) "[Plaintiff's] ability to understand, carryout [sic], and remember complex instructions is not impaired;" (7) "[Plaintiff's] response to coworkers, supervisors, and the general public is not impaired;" (8) "[Plaintiff's] ability to respond appropriately to usual work situations is not impaired;" and (9) "[Plaintiff's] ability to deal with changes in a routine work setting is not impaired."  (AR 240-41).

The ALJ also cited reports from two non-treating, non-examining physicians as evidence that Dr. Kim's opinion is inconsistent with the record.  (AR 15).  As the ALJ noted, on April 6, 2009, Dr. Paxton, a State agency medical consultant, reported that Plaintiff's personality disorder and substance addiction disorders were "not severe" impairments

1   and that Plaintiff had only a mild degree of limitation with respect to

2   activities of daily living, maintaining social functioning, and

3   maintaining concentration, persistence, or pace.  (AR 242, 250).

4

5       Further, the ALJ cited to the opinions of Dr. Rath, the medical

6   expert who testified at the hearing.  (AR 15).  After reviewing the work

7   capacity evaluation form completed by Dr. Kim and the medical record as

8   a whole, Dr. Rath stated that Plaintiff's limitations would be marked

9   "[i]f you accepted Dr. Kim at face value" but that there is "no

10  supportive documentation [for Dr. Kim's opinions]."  (AR 40).  Dr. Rath

11  also noted that Department of Corrections reports from February 2008

12  state that "[w]ith a morning dosage of medication, symptoms are under

13  control" and that Plaintiff "[a]dmitted doing a lot better on Seroquel."

14  (AR 39).  Dr. Rath observed that according to a March 2009 Department

15  of Corrections medical report, Plaintiff admitted that "the auditory

16  hallucinations are his own thoughts."  (AR 39).  In sum, Dr. Rath's

17  conclusion, which the ALJ partially relied upon, was not simply that Dr.

18  Kim's capacity evaluation lacked support but also that Dr. Kim's opinion

19  conflicted with the other doctors' opinions and the record.  (AR 40)

20  (stating that Dr. Kim's report stands in "contrast" to the medical

21  evidence).

22

23      In addition, the ALJ cited the Department of Corrections reports

24  as a reason for rejecting Dr. Kim's opinion.  For example, the ALJ

25  accurately noted that, according to Department of Corrections medical

26  records, "[Plaintiff] reports that the first time he heard a voice he

27  had been up for a long time and that he was using methamphetamine at the

28

time.  He states that the first time he took medications for this issue was while he was in prison.  He states that the medications help with his feelings of paranoia, help him concentration [sic], and quiet the voices."  (AR 15) (quoting AR 262).

The ALJ properly concluded that Dr. Kim's opinions are inconsistent with the record.  By relying upon the opinions of Dr. Parikh, Dr. Paxton, and Dr. Rath along with Department of Corrections medical reports, the ALJ provided legitimate and specific reasons to reject Dr. Kim's opinions.  Accordingly, remand is not required.

**2.   The ALJ Properly Was Not Required To Recontact Dr. Kim**

Plaintiff also argues that the ALJ improperly rejected Dr. Kim's opinion because "[even if] Dr. Kim's opinion is not supported by objective evidence[,] the ALJ still had a duty to recontact the doctor to obtain clarification and/or additional evidence."  (Pl's. Mot. Summ. J. at 6).  Specifically, Plaintiff contends that if the ALJ found the evidence from Dr. Kim was inadequate to determine whether Plaintiff was disabled, the ALJ was required to seek additional evidence or clarification from Dr. Kim.  (Id.).  As support for this proposition, Plaintiff cites to 20 C.F.R. §404.1512(e)(1) and 20 C.F.R. §416.912(e)(1), which state "[w]hen the evidence we receive from [a plaintiff's] treating physician or psychologist or other medical source is inadequate for us to determine whether [a plaintiff] disabled, we will need additional information to reach a determination or a decision."  (Id. at 6).  Plaintiff's argument fails.

1    The Ninth Circuit has consistently explained that "the requirement
2    for additional information is triggered only when the evidence from the
3    treating medical source is inadequate to make a determination as to the
4    claimant's disability." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.
5    2002). Here, the ALJ did not find that evidence from Dr. Kim was
6    inadequate to make a determination regarding Plaintiff's disability.
7    Rather, the ALJ disagreed with Dr. Kim's report and found that it was
8    against the weight of the evidence. As discussed above, in discounting
9    Dr. Kim's report, the ALJ extensively reviewed the record and noted the
10   many conflicts between the record and Dr. Kim's opinion. In sum, the
11   ALJ provided specific and legitimate reasons for rejecting Dr. Kim's
12   opinion. As discussed above, there was adequate and clear evidence to
13   determine Plaintiff's disability status and no duty to recontact Dr. Kim
14   was triggered. Therefore, Plaintiff's claim fails.

15

16   **B.   The ALJ Properly Found That Plaintiff's Bipolar Disorder Does Not**
17   **Render Plaintiff Disabled**

18

19   Plaintiff contends that the ALJ "[i]mproperly determined that
20   Plaintiff's mental impairment is not severe." (Pl's. Mot. Summ. J. at
21   7). According to Plaintiff, "the ALJ erred in failing to consider
22   Plaintiff's mental impairment of bipolar disorder II severe." (Id. at
23   8). Plaintiff's argument fails.

24

25   As an initial matter, contrary to Plaintiff's assertions, the ALJ
26   expressly considered Plaintiff's mental impairment and concluded that
27   it is severe. (AR 12) ("The claimant has the following severe
28   impairments: methamphetamine abuse, in remission during incarceration

21

and monitoring, and bipolar II disorder . . . .”).   Plaintiff’s confusion may stem from the fact that the ALJ also determined that if Plaintiff “stopped the substance abuse,” his mental impairment of bipolar II disorder “would not cause more than a minimal impact on [Plaintiff’s] ability to perform basic work activities; therefore, [Plaintiff] would not have a severe impairment or combination of impairments . . . .”   While the ALJ included this language in her final decision regarding disability, she did not make this finding at step two of the analysis.   As discussed below, when the ALJ explained that Plaintiff did not have a “severe impairment or combination of impairments” absent his substance use, it was part of her final conclusion that Plaintiff’s mental disorder did not render Plaintiff disabled.   Indeed, the ALJ described her conclusion as a finding “that, if [Plaintiff] stopped the substance use, the remaining limitations would not significantly limit his ability to perform basic work activities . . . .”   (AR 13).   The Court finds that the ALJ’s decision does not require remand.

Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits “if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner’s determination that the individual is disabled.”   Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotation marks omitted).   As the Ninth Circuit has explained, “Congress adopted this amendment in 1996 as part of the Contract with America Advancement Act (“CAAA”), Public Law 104-121.”   Id. at 746-47.   “[T]he purpose of the CAAA was to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy.”   Id. (internal quotation marks and citations ommitted).

1   Additionally, pursuant to the CAAA, when a claimant has a history of
2   drug or alcohol use, "the ALJ must conduct a drug abuse and alcoholism
3   analysis . . . by determining which of the claimant's disabling
4   limitations would remain if the claimant stopped using drugs or alcohol.
5   If the remaining limitations would still be disabling, then the
6   claimant's drug addiction or alcoholism is not a contributing factor
7   material to his disability. If the remaining limitations would not be
8   disabling, then the claimant's substance abuse is material and benefits
9   must be denied." Id. at 747 (internal citations omitted); see also 20
10  C.F.R. §§ 404.1535, 416.935.  Additionally, the claimant bears the
11  burden of proving that his drug or alcoholism is not a contributing
12  factor. Ball v. Massanari, 254 F.3d 817, 822-23 (9th Cir. 2001).

13

14      Here, the ALJ first evaluated whether Plaintiff was disabled
15  without separating out the impact of substance abuse.  The ALJ found
16  that Plaintiff's substance abuse disorder met a Listing and that
17  Plaintiff was therefore presumptively disabled. (AR 12).  The ALJ then
18  analyzed whether Plaintiff would be disabled absent the substance abuse.
19  (Id.).  As discussed above, the ALJ found that if Plaintiff stopped the
20  substance use, his mental health disorder "would not significantly limit
21  his ability to perform basic work activities." (AR 13).  In coming to
22  that conclusion, the ALJ accurately noted that while Plaintiff was a
23  resident at the sober house, he "wiped the tables, swept and mopped the
24  dining area for 1 hour 7 days a week, shopped for 30 minutes daily,
25  attended classes, and watched television." (See AR 15; see also AR
26  174-75, 237).  The ALJ also accurately noted that Plaintiff "watches
27  television, takes walks, makes his bed, reads the Bible daily, helps his
28  nephews, volunteering [to] help with their chores, including cleaning

23

the pool, and cutting grass." (See AR 15; see also AR 35, 174-75).
Additionally, as the ALJ noted, Plaintiff's mental health problems were
controlled with medication. (See AR 15; see also AR 36, 262, 289).

Further, the ALJ relied upon medical reports that when Plaintiff
lived in the sober house, he was able to manage funds, pay bills, take
care of grooming and hygiene, wake up at 5:00 a.m., help with household
chores, attend all meetings, and complete paperwork. (See AR 15; see
also AR 238-39). As discussed above, the ALJ also cited to reports that
(1) "[t]here are no mental restrictions in [Plaintiff's] daily
activities;" (2) "[t]here are no mental difficulties in maintaining
social functioning;" (3) "[Plaintiff's] concentration, persistence, and
pace are not impaired;" (4) "[t]here are no repeated episodes of
emotional deterioration in work-like situations;" (5) "[Plaintiff's]
ability to understand, carryout [sic], and remember simple instructions
is not impaired;" (6) "[Plaintiff's] ability to understand, carryout
[sic], and remember complex instructions is not impaired;" (7)
"[Plaintiff's] response to coworkers, supervisors, and the general
public is not impaired;" (8) "[Plaintiff's] ability to respond
appropriately to usual work situations is not impaired;" and (9)
"[Plaintiff's] ability to deal with changes in a routine work setting
is not impaired." (See AR 15; see also AR 240-41).

The ALJ then concluded that Plaintiff would be able to perform
basic work activities including (1) "[p]hysical functions such as
walking, standing, sitting, lifting, pushing, pulling, reaching,
carrying, or handling;" (2) "[c]apacities for seeing, hearing, and
speaking;" (3) "[u]nderstanding, carrying out, and remembering simple

1    instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately
2    to supervision, co-workers, and usual work situations;" and (6)
3    "[d]ealing with changes in a routine work setting." (AR 12-13). The
4    ALJ asked a vocational expert whether a hypothetical individual of this
5    RFC and Plaintiff's vocational profile would be able to perform any of
6    Plaintiff's past relevant work, and the vocational expert reported, "Yes
7    he could. All of the prior work." (AR 47). Therefore, the Court finds
8    that the ALJ thoroughly considered the record and accurately determined
9    that if Plaintiff stopped using drugs, his remaining limitations would
10   not be disabling. Thus, the ALJ properly denied benefits. Parra, 481
11   F.3d at 747.

12

13   Nevertheless, Plaintiff argues that the ALJ's conclusion is
14   inconsistent with the record because (1) Dr. Kim reported that Plaintiff
15   cannot work; and (2) at the time Dr. Kim examined Plaintiff, Plaintiff
16   was not on drugs. (Pl's. Mot. Summ. J. at 8). However, as this Court
17   explained in its lengthy discussion of Dr. Kim's work capacity
18   evaluation form, the ALJ provided specific and legitimate reasons
19   supported by substantial evidence for rejecting Dr. Kim's opinions.
20   Benton, 331 F.3d at 1036. Accordingly, Plaintiff's claim fails and
21   remand is not required.

22

23   \\
24   \\
25   \\
26   \\
27   \\
28   \\

25

# VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 15, 2013.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

_____

[8]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

26