1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JOSE RODRIGUEZ,                    )   NO. CV 12-04960 SS
                                      )
12                 Plaintiff,         )
                                      )
13          v.                        )
                                      )   **MEMORANDUM DECISION AND ORDER**
14 CAROLYN W. COLVIN,                 )
   Acting Commissioner of the        )
15 Social Security Administration,    )
                                      )
16                 Defendant.         )
   _____)

17

18                              **I.**

19                         **INTRODUCTION**

20

21      Jose Rodriguez ("Plaintiff") brings this action seeking to overturn

22 the decision of the Commissioner of the Social Security Administration

23 (hereinafter the "Commissioner" or the "Agency") denying his application

24 for Social Security Disability Insurance benefits ("DIB") and

25 Supplemental Security Income benefits ("SSI").  The parties consented,

26 pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

27 United States Magistrate Judge.  For the reasons stated below, the

28 decision of the Agency is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 20, 2009. (Administrative Record ("AR") 123-134). He alleged a disability onset date of March 1, 2006. (AR 123). His last-insured date was December 31, 2006. (AR 135). The Agency initially denied this claim on April 8, 2009. (AR 50-51). After Plaintiff requested and received reconsideration of his claim, Plaintiff's claim was denied again on October 8, 2009. (AR 52-53).

On November 17, 2009, Plaintiff filed a written request for a hearing. (AR 87). Plaintiff testified at a hearing held before Administrative Law Judge ("ALJ") Helen E. Hesse on September 15, 2010. (AR 20-49). On January 27, 2010, the ALJ issued a decision denying benefits. (AR 6-19). That same day, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 1). The Appeals Council denied Plaintiff's request on April 11, 2012. (Id.). Plaintiff then requested judicial review by filing the instant action on June 15, 2012.

## III.

### FACTUAL BACKGROUND

Plaintiff, who was forty-five at the time of the ALJ hearing, has a high school education and earned an electronic technician certificate from a trade school. (AR 29, 123, 131, 147, 149). Plaintiff worked as a forklift operator from 1993 until 2005. (AR 149). As discussed

2

1  below, Plaintiff was incarcerated at various points after his alleged
2  disability onset date.  Additionally, Plaintiff used methamphetamine
3  until 2006, when he was first incarcerated.  There is no record of
4  methamphetamine use after incarceration, including after Plaintiff was
5  released to a "sober living" halfway house in May 2009.  Plaintiff was
6  incarcerated again from September to December 2009 for a parole
7  violation.  He currently lives at both his sister's home and his
8  mother's home.  Plaintiff reports that he has not abused drugs since his
9  initial incarceration.

10

11     During the hearing, Plaintiff stated that he has not worked since
12  2006, although he noted that he worked "for a couple of months" in "2005
13  or 2006."  (AR 32).  Plaintiff stated that he has not received
14  unemployment benefits, state disability benefits, workers' compensation
15  benefits, or general relief benefits since 2006 and that he has had no
16  income since that time. (Id.).  According to Plaintiff, he cannot work
17  because he hears voices.  (AR 33).  Specifically, when the ALJ asked
18  Plaintiff why he is unable to work, Plaintiff stated, "I don't know.
19  I just - I hear voices.  I mean, it - I just walk away from the jobs."
20  (Id.).  Plaintiff further testified that the voices are sprits telling
21  him "[w]hat people are thinking" such as that he is "stupid."  (Id.).

22

23     Plaintiff testified that he watches television, takes walks, helps
24  care for his nephews, cleans the pool and garage, mows the lawn, and
25  reads every day.  (AR 34).  Additionally, according to staff at the
26  facility where Plaintiff resides, Plaintiff "[was] able to do all
27  household chores," "go[] outside daily," and "walk[] and use[] public

28

transportation" but "[could] not legally drive."  (AR 174).  When Plaintiff lived at the facility, he shopped in stores on a weekly basis and was able to pay bills, count change, handle a savings account, and use a checkbook. (AR 174-75).  At that time, Plaintiff's hobbies and interests included "watching TV, walking and going on bus rides," which Plaintiff did each day "with no problem."  (AR 175).

Plaintiff also testified that medication helps his condition.  (AR 36).  Additionally, according to Department of Corrections medical reports, Plaintiff previously stated that medication "quiet[s] the voices" and helps with his concentration and feelings of paranoia.  (AR 262).

**A.   Plaintiff's Medical History**

A variety of medical professionals have examined Plaintiff between his alleged disability onset date and when he filed for benefits.  The Court summarizes Plaintiff's medical history below.

Plaintiff did not receive professional mental health care treatment until he was incarcerated.  Department of Corrections medical records from 2007 indicate that Plaintiff suffered from amphetamine-induced psychotic disorder and amphetamine dependence with hallucinations.  (AR 200-34).   In the absence of amphetamine use, the Department of Corrections diagnosed Plaintiff with bipolar II disorder, not otherwise specified, and polysubstance dependence with a GAF of 60.  (AR 212-14). Department of Corrections psychological evaluation records also state

1  that Plaintiff's fund of information, intellectual functioning,
2  organization and association of thought were all within normal limits.
3  (AR 216). Additionally, a February 14, 2007 report noted that Plaintiff
4  did not suffer from "perception disturbances" and that his
5  hallucinations were "under control of meds [sic]." (AR 214). Upon
6  evaluation by the Department of Corrections in 2009, Plaintiff reported
7  no negative side effects from medication. (AR 289). Department of
8  Corrections medical reports also indicate that, according to Plaintiff,
9  "the first time he heard a voice he had been up for a long time and that
10 he was using methamphetamine at the time. He states that the first time
11 he took medications for this issue was while he was in prison. He
12 states that the medications help with his feelings of paranoia, help him
13 concentration [sic], and quiet the voices." (AR 262).

14

15     In March 2009, consultative psychiatrist Sohini Parikh, M.D.,
16 diagnosed Plaintiff with mood disorder, N.O.S.; alcohol and drug abuse,
17 in remission; and bipolar disorder with a GAF of 70. (AR 235-41). Dr.
18 Parikh noted that Plaintiff had no impairment in mental functioning.
19 (AR 237-39). Dr. Parikh reported that Plaintiff lived in a sober house,
20 was able to pay bills, manage funds, take care of grooming and hygiene,
21 and get along with others, including close friends. (AR 237).
22 According to Dr. Parikh, Plaintiff attended all sober house meetings and
23 assisted in the kitchen. (Id.) Dr. Parikh also noted that Plaintiff
24 had no difficulty completing household tasks, following simple oral and
25 written instructions, or making decisions. (Id.). Plaintiff was able
26 to focus during the evaluation. (Id.) Further, Dr. Parikh observed
27 that Plaintiff reported hearing voices "but stated that this could be
28

1  'his own thoughts'" and denied having visual hallucinations.  (AR 238).
2  According to Dr. Parikh, Plaintiff denied "delusions, phobias, or ideas
3  of reference" and displayed "no evidence that [he] was responding to
4  internal stimuli during the . . . evaluation."  (AR 238-39).
5  Additionally, Plaintiff was able to perform serial sevens and serial
6  threes and could complete simple calculations.  (AR 239).

7

8      In April 2009, state agency medical consultant Dr. R. Paxton, M.D.,
9  reported that Plaintiff's impairments were nonsevere.  (AR 242).  Dr.
10  Paxton noted that Plaintiff presented with personality disorders and
11  substance addiction disorders.  (Id.)  However, Dr. Paxton reported that
12  Plaintiff had only mild restriction of activities of daily living, mild
13  difficulties in maintaining social functioning, mild difficulties in
14  maintaining concentration, and no repeated episodes of decompensation
15  of extended duration.  (AR 242-49).

16

17      In July 2010, Plaintiff's treating physician, Dr. Ingyu Kim, M.D.,
18  reported that Plaintiff had marked limitation in the ability to follow
19  instructions and respond appropriately to criticism from supervisors,
20  maintain attention and concentration for extended periods, perform
21  activities within a schedule, maintain regular attendance and be
22  punctual within customary tolerances, and work in coordination with or
23  proximity to others without being distracted by them.  (AR 305).  Dr.
24  Kim also reported that Plaintiff had moderate limitation in the ability
25  to interact appropriately with the general public or get along with
26  coworkers or peers without distracting them or exhibiting behavioral
27  extremes.  (Id.).  Additionally, Dr. Kim noted that Plaintiff would have
28

trouble reacting to changes in a work environment and would have difficulty establishing realistic goals or making plans independently of others. (Id.). Finally, Dr. Kim noted that Plaintiff's impairments would cause him to miss three or more days of work each month. (Id.). However, at the ALJ hearing, medical expert Dr. Craig Rath, M.D., testified that he reviewed Plaintiff's medical records and found no support for Dr. Kim's conclusions. (AR 40). Dr. Rath further testified that although there was evidence that Plaintiff was markedly limited in several areas when he was using drugs, in the absence of methamphetamine use, Plaintiff's impairment was mild. (AR 41).

**B.   Vocational Expert's Testimony**

A vocational expert testified at the 2010 hearing. (AR 45-47). The expert testified that a hypothetical individual of Plaintiff's vocational profile and residual functional capacity ("RFC") would be able to perform all of Plaintiff's past relevant work. (AR 47) ("Yes he could. All of the prior work."). The vocational expert also testified that such a person would not be able to perform Plaintiff's past relevant work if he had to miss more than two days of work a month. (Id.).

**C.   Lay Witness Testimony**

On February 17, 2009, Emanuel Olague, Plaintiff's case manager at his sober house, submitted a third party function report. (AR 171-78). Mr. Olague reported that between waking up and going to bed, Plaintiff

7

1  "attends required education and group sessions concerning his mental
2  health and addiction issues." (AR 171).  According to Mr. Olague,
3  Plaintiff "can not [sic] work outdoors due to medication." (AR 172).
4  Additionally, according to Mr. Olague, Plaintiff "is able to do all
5  household chores." (<u>Id.</u>).  Mr. Olague further reported that Plaintiff
6  "goes outside daily" and walks and uses public transportation but "can
7  not [sic] legally drive." (AR 174).  The report indicates that
8  Plaintiff shops in stores on a weekly basis, is able to pay bills, count
9  change, handle a savings account, and use a checkbook. (AR 174-75).
10 Plaintiff's hobbies and interests include "watching TV, walking and
11 going on bus rides," which Mr. Olague reported Plaintiff does on a daily
12 basis "with no problem." (AR 175).  However, Mr. Olague noted that
13 Plaintiff "has difficulties focusing and staying alert while injoying
14 [sic] [such] activities." (<u>Id.</u>).  According to Mr. Olague, Plaintiff
15 is also "extremely talkative with others in the program, although
16 Plaintiff has problems with memory, stress, routine changes, completing
17 tasks, concentration, understanding, following instructions including
18 written instructions, and getting along with authority figures." (AR
19 176-77).

20

21 **D.   <u>Plaintiff's Testimony</u>**

22

23     At the hearing, Plaintiff testified that he stopped working because
24 he hears voices. (AR 33).  Specifically, Plaintiff stated, "I just -
25 I hear voices.  I mean, it - I just walk away from the jobs." (<u>Id.</u>).
26 Plaintiff testified that sprits tell him "[w]hat people are thinking."
27 (<u>Id.</u>).  For example, Plaintiff stated that the spirits tell him that

28

8

1  other people think he is "stupid." (Id.).  Plaintiff also stated that

2  medication helps his condition.  (AR 36).  Plaintiff stated that he

3  watches television, takes walks, helps care for his nephews, cleans the

4  pool and garage, mows the lawn, and reads every day.  (AR 34).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

9      To qualify for disability benefits, a claimant must demonstrate a

10  medically determinable physical or mental impairment that prevents him

11  from engaging in substantial gainful activity[1] and that is expected to

12  result in death or to last for a continuous period of at least twelve

13  months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing

14  42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant

15  incapable of performing the work he previously performed and incapable

16  of performing any other substantial gainful employment that exists in

17  the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

18  1999) (citing 42 U.S.C. § 423(d)(2)(A)).

20      To decide if a claimant is entitled to benefits, an ALJ conducts

21  a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

23      (1)  Is the claimant presently engaged in substantial gainful

24           activity?  If so, the claimant is found not disabled.

25           If not, proceed to step two.

---

[1]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

9

(2)     Is the claimant's impairment severe?  If not, the
        claimant is found not disabled.  If so, proceed to step
        three.

(3)     Does the claimant's impairment meet or equal the
        requirements of any impairment listed at 20 C.F.R. Part
        404, Subpart P, Appendix 1?  If so, the claimant is
        found disabled.  If not, proceed to step four.

(4)     Is the claimant capable of performing h[er] past work?
        If so, the claimant is found not disabled.  If not,
        proceed to step five.

(5)     Is the claimant able to do any other work?  If not, the
        claimant is found disabled.  If so, the claimant is
        found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

       The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets her burden of
establishing an inability to perform the past work, the Commissioner
must show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's RFC, age, education and work experience.  Tackett, 180 F.3d
at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the
testimony of a vocational expert or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

10

1   Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240

2   F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional

3   (strength-related)  and  nonexertional  limitations,  the  Grids  are

4   inapplicable and the ALJ must take the testimony of a vocational expert.

5   Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

6

7                                    **V.**

8                            **THE ALJ'S DECISION**

9

10      On May 11, 2011, Plaintiff appeared and testified at a hearing held

11  before ALJ Helen E. Hesse.  An impartial vocational expert and medical

12  examiner also testified at the hearing.  (AR 38-41, 45-47).

13

14      The ALJ then employed the five-step sequential evaluation process

15  and concluded that Plaintiff was not disabled under the Social Security

16  Act.  (AR 11-16).  At step one, the ALJ found that Plaintiff had not

17  engaged in substantial gainful activity since his alleged disability

18  onset date of March 1, 2006.  (AR 12).  At step two, the ALJ found that

19  Plaintiff had the severe impairments of "methamphetamine abuse, in

20  remission during incarceration and monitoring, and bipolar II disorder."

21  (Id.).  At step three, the ALJ throughly considered the impairments

22  listed in step two and found that, through the last-insured date,

23  Plaintiff's "substance abuse disorder meets listing 12.09."  (Id.).

24

25

26

27

28

Consistent with 42 U.S.C. § 423(d)(2)(C), the ALJ then found that Plaintiff is not disabled.[2]   (AR 12).   42 U.S.C. § 423 and the regulations promulgated thereunder operate to deny social security disability benefits to claimants whose alcoholism or drug addiction is a contributing factor material to the determination of his or her disability.   See 20 C.F.R. § 416.935.[3]   Here, the ALJ explained that "if [Plaintiff] stopped the substance use, the remaining limitations would not cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would not have a severe impairment or combination of impairments."   (AR 12).

While the ALJ stated that Plaintiff would not have "a severe impairment" but for his substance use, the ALJ concluded that Plaintiff's impairments would not render him disabled absent his drug use.   Specifically, the ALJ found that Plaintiff had the RFC of someone able to perform basic work activities including (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding

---

[2]    Section 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

[3]    Section 416.935(b)(1) provides that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."

12

appropriately to supervision, co-workers, and usual work situations;"
and (6) "[d]ealing with changes in a routine work setting."  (AR 12-13).
The ALJ then found that without substance abuse, Plaintiff would not be
disabled because he could perform all of his past relevant work.  (AR
13).  Accordingly, the ALJ concluded that "[Plaintiff] has not been
disabled within the meaning of the Social Security Act at any time from
the alleged onset date through the date of this decision."  (AR 16).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  The court may set aside the
Commissioner's decision when the ALJ's findings are based on legal error
or are not supported by substantial evidence in the record as a whole.
Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.
Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial evidence is
more than a scintilla, but less than a preponderance."  Reddick, 157
F.3d at 720.  It is "relevant evidence which a reasonable person might
accept as adequate to support a conclusion."  Id.  To determine whether
substantial evidence supports a finding, the court must "'consider the
record as a whole, weighing both evidence that supports and evidence
that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d
at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).
If the evidence can reasonably support either affirming or reversing
that conclusion, the court may not substitute its judgment for that of
the Commissioner.  Reddick, 157 F.3d at 720-21.

13

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ committed error for two reasons. First, Plaintiff alleges that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Dr. Kim. (Pl's. Mot. Summ. J. at 3-7). Second, Plaintiff alleges that the ALJ "fail[ed] to consider Plaintiff's mental impairment of bipolar disorder II severe" when she found that, when sober, Plaintiff does not have an impairment that severely affects his ability to perform basic work activities. (Pl's. Mot. Summ. J. at 7; AR 7-8). The Court finds that Plaintiff's claims lack merit. For the reasons discussed below, the Court finds that the ALJ's decision should be AFFIRMED.

**A.** **The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Kim's Opinion**

According to Plaintiff, "the ALJ erroneously assessed no weight to the treating physician's opinion." (Pl's. Mot. Summ. J. at 6). In the alternative, Plaintiff argues that "[even if] Dr. Kim's opinion is not supported by objective evidence[,] the ALJ still had a duty to recontact the doctor to obtain clarification and/or additional evidence." (Id.). In support of these contentions, Plaintiff argues that if the ALJ found the evidence from Dr. Kim to be inadequate to determine whether Plaintiff was disabled, the ALJ was required to seek additional evidence or clarification from Dr. Kim. (Id.) (citing 20 C.F.R. §404.1512(e)(1) and 20 C.F.R. §416.912(e)(1)) ("We will seek additional evidence or

14

clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")

**1.    The ALJ Properly Considered Dr. Kim's Opinion**

Plaintiff's contention that the ALJ failed to properly consider Dr. Kim's opinion lacks merit.  Although the opinion of a treating physician is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). When a treating doctor's opinion is contradicted by another doctor, "the Commissioner may not reject his opinion without providing 'specific and legitimate reasons' supported by substantial evidence." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)).  An ALJ may give less weight to a treating physician's opinions when the treating physician's opinions conflict with those of a non-examining physician and the non-examining physician's opinions are consistent with the record. Magallanes v. Bowen, 881 F.2d 747, 751-755 (9th Cir. 1989).

Here, Plaintiff notes that Dr. Kim completed a work capacity evaluation form regarding Plaintiff and found that Plaintiff had a number of restrictions.  (Pl's. Mot. Summ. J. at 4-5) (citing AR 304-05).  Dr. Kim reported that Plaintiff had marked limitation in the

15

ability to follow instructions and respond appropriately to criticism from supervisors, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and work in coordination with or proximity to others without being distracted by them. (Id.). As Plaintiff further notes, Dr. Kim found that Plaintiff would have moderate limitation in the ability to interact appropriately with the general public or get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.). Additionally, Plaintiff observes that Dr. Kim reported that Plaintiff would have trouble reacting to changes in his work environment and would have difficulty establishing realistic goals or making plans independently of others. (Id.). Finally, Plaintiff points to Dr. Kim's conclusion that Plaintiff would miss three or more days of work each month. (Id.) (citing AR 305).

According to Plaintiff, "the ALJ erred in concluding that Dr. Kim's opinion is not supported by documentation." (Id. at 4). Plaintiff contends that "[t]he record includes Dr. Kim's treatment notes ranging from January 2009 to August 2010, which support Dr. Kim's opinion." (Id. at 5) (citing AR 308-30). However, the ALJ did not base her decision to reject Dr. Kim's opinion merely on an absence of supporting documentation. Instead, the ALJ observed that Dr. Kim's opinions conflict with the opinions of other physicians, both examining and non-examining, and that those physicians' opinions are more consistent with the record. Specifically, the ALJ stated that "[t]he evidence of record is consistent in indicating that [Plaintiff] is high functioning, with

1    GAF ratings of 60-70, when not using illegal substances." (AR 15). The
2    ALJ also observed that "[t]he medical opinions of medical expert Dr.
3    Rath, and the medical opinions of consultative examiner Dr. Parikh, and
4    State agency medical consultant Dr. Paxton, as well as the opinions of
5    treating sources in the Department of Corrections, are fully credible
6    based upon supportability with medical signs and laboratory findings,
7    consistency with the record, and area of specialization." (Id.).

8

9        The ALJ's conclusion is supported by the record. Dr. Parikh's
10   conclusions regarding Plaintiff's limitations, which are contrary to Dr.
11   Kim's conclusions, find an abundance of support in the medical evidence.
12   (AR 15). On March 29, 2009, Dr. Parikh examined Plaintiff and reported
13   that Plaintiff, who was then living in a sober house, "does manage funds
14   and pay bills. [Plaintiff] takes care of grooming and hygiene.
15   [Plaintiff] wakes up at 5 am, helps out in the kitchen, he attends all
16   meetings, and he completes paperwork." (AR 237). Dr. Parikh also
17   reported that Plaintiff was "able to focus attention during th[e]
18   evaluation. [Plaintiff] has no difficulty completing household tasks.
19   [Plaintiff] can follow simple oral and written instructions.
20   [Plaintiff] has no difficulty making decisions." (Id.). Additionally,
21   according to Dr. Parikh's examination notes, Plaintiff was "cooperative"
22   and "attentive during the evaluation." (AR 238). Dr. Parikh also
23   observed that while Plaintiff reported hearing voices, Plaintiff
24   admitted that they "could be his own thoughts." (Id.). Plaintiff
25   denied "delusions, phobias, or ideas of reference. There was no
26   evidence that the claimant was responding to internal stimuli during the
27   contact period of th[e] evaluation." (AR 238-39). Plaintiff was able
28

17

to perform serial sevens and serial threes and to complete simple
calculations.  (AR 239).

Dr. Parikh diagnosed Plaintiff with mood disorder, not otherwise
specified; alcohol and drug abuse, in the past; bipolar disorder, by
history; and hypertension, by history.  (AR 240).  However, Dr. Parikh
noted that "[f]rom a psychiatric standpoint, [Plaintiff's] prognosis is
expected to improve if he refrains from using drugs and alcohol and
complies with medications."  (Id.).  Dr. Parikh concluded that (1)
"[t]here are no mental restrictions in [Plaintiff's] daily activities;"
(2) "[t]here are no mental difficulties in maintaining social
functioning;" (3) "[Plaintiff's] concentration, persistence, and pace
are not impaired;" (4) "[t]here are no repeated episodes of emotional
deterioration in work-like situations;" (5) "[Plaintiff's] ability to
understand, carryout [sic], and remember simple instructions is not
impaired;" (6) "[Plaintiff's] ability to understand, carryout [sic], and
remember complex instructions is not impaired;" (7) "[Plaintiff's]
response to coworkers, supervisors, and the general public is not
impaired;" (8) "[Plaintiff's] ability to respond appropriately to usual
work situations is not impaired;" and (9) "[Plaintiff's] ability to deal
with changes in a routine work setting is not impaired."  (AR 240-41).

The ALJ also cited reports from two non-treating, non-examining
physicians as evidence that Dr. Kim's opinion is inconsistent with the
record.  (AR 15).  As the ALJ noted, on April 6, 2009, Dr. Paxton, a
State agency medical consultant, reported that Plaintiff's personality
disorder and substance addiction disorders were "not severe" impairments

18

1  and that Plaintiff had only a mild degree of limitation with respect to

2  activities of daily living, maintaining social functioning, and

3  maintaining concentration, persistence, or pace.  (AR 242, 250).

4

5       Further, the ALJ cited to the opinions of Dr. Rath, the medical

6  expert who testified at the hearing.  (AR 15).  After reviewing the work

7  capacity evaluation form completed by Dr. Kim and the medical record as

8  a whole, Dr. Rath stated that Plaintiff's limitations would be marked

9  "[i]f you accepted Dr. Kim at face value" but that there is "no

10 supportive documentation [for Dr. Kim's opinions]."  (AR 40).  Dr. Rath

11 also noted that Department of Corrections reports from February 2008

12 state that "[w]ith a morning dosage of medication, symptoms are under

13 control" and that Plaintiff "[a]dmitted doing a lot better on Seroquel."

14 (AR 39).  Dr. Rath observed that according to a March 2009 Department

15 of Corrections medical report, Plaintiff admitted that "the auditory

16 hallucinations are his own thoughts."  (AR 39).  In sum, Dr. Rath's

17 conclusion, which the ALJ partially relied upon, was not simply that Dr.

18 Kim's capacity evaluation lacked support but also that Dr. Kim's opinion

19 conflicted with the other doctors' opinions and the record.  (AR 40)

20 (stating that Dr. Kim's report stands in "contrast" to the medical

21 evidence).

22

23      In addition, the ALJ cited the Department of Corrections reports

24 as a reason for rejecting Dr. Kim's opinion.  For example, the ALJ

25 accurately noted that, according to Department of Corrections medical

26 records, "[Plaintiff] reports that the first time he heard a voice he

27 had been up for a long time and that he was using methamphetamine at the

28

time.  He states that the first time he took medications for this issue was while he was in prison.  He states that the medications help with his feelings of paranoia, help him concentration [sic], and quiet the voices."  (AR 15) (quoting AR 262).

The ALJ properly concluded that Dr. Kim's opinions are inconsistent with the record.  By relying upon the opinions of Dr. Parikh, Dr. Paxton, and Dr. Rath along with Department of Corrections medical reports, the ALJ provided legitimate and specific reasons to reject Dr. Kim's opinions.  Accordingly, remand is not required.

### 2.   The ALJ Properly Was Not Required To Recontact Dr. Kim

Plaintiff also argues that the ALJ improperly rejected Dr. Kim's opinion because "[even if] Dr. Kim's opinion is not supported by objective evidence[,] the ALJ still had a duty to recontact the doctor to obtain clarification and/or additional evidence."  (Pl's. Mot. Summ. J. at 6).  Specifically, Plaintiff contends that if the ALJ found the evidence from Dr. Kim was inadequate to determine whether Plaintiff was disabled, the ALJ was required to seek additional evidence or clarification from Dr. Kim.  (Id.).  As support for this proposition, Plaintiff cites to 20 C.F.R. §404.1512(e)(1) and 20 C.F.R. §416.912(e)(1), which state "[w]hen the evidence we receive from [a plaintiff's] treating physician or psychologist or other medical source is inadequate for us to determine whether [a plaintiff] disabled, we will need additional information to reach a determination or a decision."  (Id. at 6).  Plaintiff's argument fails.

20

The Ninth Circuit has consistently explained that "the requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Here, the ALJ did not find that evidence from Dr. Kim was inadequate to make a determination regarding Plaintiff's disability. Rather, the ALJ disagreed with Dr. Kim's report and found that it was against the weight of the evidence. As discussed above, in discounting Dr. Kim's report, the ALJ extensively reviewed the record and noted the many conflicts between the record and Dr. Kim's opinion. In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Kim's opinion. As discussed above, there was adequate and clear evidence to determine Plaintiff's disability status and no duty to recontact Dr. Kim was triggered. Therefore, Plaintiff's claim fails.

## B.   **The ALJ Properly Found That Plaintiff's Bipolar Disorder Does Not Render Plaintiff Disabled**

Plaintiff contends that the ALJ "[i]mproperly determined that Plaintiff's mental impairment is not severe." (Pl's. Mot. Summ. J. at 7). According to Plaintiff, "the ALJ erred in failing to consider Plaintiff's mental impairment of bipolar disorder II severe." (Id. at 8). Plaintiff's argument fails.

As an initial matter, contrary to Plaintiff's assertions, the ALJ expressly considered Plaintiff's mental impairment and concluded that it is severe. (AR 12) ("The claimant has the following severe impairments: methamphetamine abuse, in remission during incarceration

21

1    and monitoring, and bipolar II disorder . . . .").  Plaintiff's
2    confusion may stem from the fact that the ALJ also determined that if
3    Plaintiff "stopped the substance abuse," his mental impairment of
4    bipolar II disorder "would not cause more than a minimal impact on
5    [Plaintiff's] ability to perform basic work activities; therefore,
6    [Plaintiff] would not have a severe impairment or combination of
7    impairments . . . ."  While the ALJ included this language in her final
8    decision regarding disability, she did not make this finding at step two
9    of the analysis.  As discussed below, when the ALJ explained that
10   Plaintiff did not have a "severe impairment or combination of
11   impairments" absent his substance use, it was part of her final
12   conclusion that Plaintiff's mental disorder did not render Plaintiff
13   disabled.  Indeed, the ALJ described her conclusion as a finding "that,
14   if [Plaintiff] stopped the substance use, the remaining limitations
15   would not significantly limit his ability to perform basic work
16   activities . . . ."  (AR 13).  The Court finds that the ALJ's decision
17   does not require remand.

18

19        Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive
20   disability benefits "if alcoholism or drug addiction would . . . be a
21   contributing factor material to the Commissioner's determination that
22   the individual is disabled."  Parra v. Astrue, 481 F.3d 742, 746 (9th
23   Cir. 2007) (internal quotation marks omitted).  As the Ninth Circuit has
24   explained, "Congress adopted this amendment in 1996 as part of the
25   Contract with America Advancement Act ("CAAA"), Public Law 104-121."
26   Id. at 746-47.  "[T]he purpose of the CAAA was to discourage alcohol and
27   drug abuse, or at least not to encourage it with a permanent government
28   subsidy."  Id. (internal quotation marks and citations ommitted).

Additionally, pursuant to the CAAA, when a claimant has a history of drug or alcohol use, "the ALJ must conduct a drug abuse and alcoholism analysis . . . by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." Id. at 747 (internal citations omitted); see also 20 C.F.R. §§ 404.1535, 416.935.   Additionally, the claimant bears the burden of proving that his drug or alcoholism is not a contributing factor. Ball v. Massanari, 254 F.3d 817, 822-23 (9th Cir. 2001).

Here, the ALJ first evaluated whether Plaintiff was disabled without separating out the impact of substance abuse.   The ALJ found that Plaintiff's substance abuse disorder met a Listing and that Plaintiff was therefore presumptively disabled. (AR 12).   The ALJ then analyzed whether Plaintiff would be disabled absent the substance abuse. (Id.).   As discussed above, the ALJ found that if Plaintiff stopped the substance use, his mental health disorder "would not significantly limit his ability to perform basic work activities." (AR 13).   In coming to that conclusion, the ALJ accurately noted that while Plaintiff was a resident at the sober house, he "wiped the tables, swept and mopped the dining area for 1 hour 7 days a week, shopped for 30 minutes daily, attended classes, and watched television." (See AR 15; see also AR 174-75, 237).   The ALJ also accurately noted that Plaintiff "watches television, takes walks, makes his bed, reads the Bible daily, helps his nephews, volunteering [to] help with their chores, including cleaning

23

the pool, and cutting grass." (See AR 15; see also AR 35, 174-75). Additionally, as the ALJ noted, Plaintiff's mental health problems were controlled with medication. (See AR 15; see also AR 36, 262, 289).

Further, the ALJ relied upon medical reports that when Plaintiff lived in the sober house, he was able to manage funds, pay bills, take care of grooming and hygiene, wake up at 5:00 a.m., help with household chores, attend all meetings, and complete paperwork. (See AR 15; see also AR 238-39). As discussed above, the ALJ also cited to reports that (1) "[t]here are no mental restrictions in [Plaintiff's] daily activities;" (2) "[t]here are no mental difficulties in maintaining social functioning;" (3) "[Plaintiff's] concentration, persistence, and pace are not impaired;" (4) "[t]here are no repeated episodes of emotional deterioration in work-like situations;" (5) "[Plaintiff's] ability to understand, carryout [sic], and remember simple instructions is not impaired;" (6) "[Plaintiff's] ability to understand, carryout [sic], and remember complex instructions is not impaired;" (7) "[Plaintiff's] response to coworkers, supervisors, and the general public is not impaired;" (8) "[Plaintiff's] ability to respond appropriately to usual work situations is not impaired;" and (9) "[Plaintiff's] ability to deal with changes in a routine work setting is not impaired." (See AR 15; see also AR 240-41).

The ALJ then concluded that Plaintiff would be able to perform basic work activities including (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple

1  instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately
2  to supervision, co-workers, and usual work situations;" and (6)
3  "[d]ealing with changes in a routine work setting." (AR 12-13). The
4  ALJ asked a vocational expert whether a hypothetical individual of this
5  RFC and Plaintiff's vocational profile would be able to perform any of
6  Plaintiff's past relevant work, and the vocational expert reported, "Yes
7  he could. All of the prior work." (AR 47). Therefore, the Court finds
8  that the ALJ thoroughly considered the record and accurately determined
9  that if Plaintiff stopped using drugs, his remaining limitations would
10 not be disabling. Thus, the ALJ properly denied benefits. Parra, 481
11 F.3d at 747.

12

13     Nevertheless, Plaintiff argues that the ALJ's conclusion is
14 inconsistent with the record because (1) Dr. Kim reported that Plaintiff
15 cannot work; and (2) at the time Dr. Kim examined Plaintiff, Plaintiff
16 was not on drugs. (Pl's. Mot. Summ. J. at 8). However, as this Court
17 explained in its lengthy discussion of Dr. Kim's work capacity
18 evaluation form, the ALJ provided specific and legitimate reasons
19 supported by substantial evidence for rejecting Dr. Kim's opinions.
20 Benton, 331 F.3d at 1036. Accordingly, Plaintiff's claim fails and
21 remand is not required.

22

23 \\
24 \\
25 \\
26 \\
27 \\
28 \\

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIII.**

**CONCLUSION**


    Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED: May 15, 2013.

                                        /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE


    **THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

    [8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."